STATE ex rel. WILLIAM DEVINE v. LOUIS H. PETER and Another.[1]

April 23, 1909.

Nos. 16,145—(38).

**Claim against County—Power to Rescind Action.**

*Held,* construing R. L. 1905, § 620, that when a board of county commissioners has once deliberately acted upon a claim against a county and definitely allowed or disallowed it, so that the time for appeal therefrom has begun to run, it cannot thereafter, at least in the absence of fraud or mistake and notice of hearing, set aside its decision and take some other action thereon.

On petition of relator the district court for Ramsey county granted an alternative writ of mandamus directing Louis H. Peter as acting chairman of the board of county commissioners and Edward G. Krahmer to issue a county warrant to the relator for the sum of $1,114.80 on a claim audited and allowed by the board. The court, Brill, J.,

[1] Reported in 120 N. W. 896.

made the writ peremptory. From the judgment entered pursuant to the order, respondents appealed. Affirmed.

*Richard D. O'Brien* and *Patrick J. Ryan,* for appellants.

*O. H. O'Neill,* for respondent.

START, C. J.

Appeal by the defendants from a judgment of the district court of the county of Ramsey adjudging that peremptory writ of mandamus issue directing them, respectively, as acting chairman of the board of county commissioners and county auditor, to issue to the relator a warrant upon the county treasurer for the sum of $1,114.80. There is no substantial controversy as to the facts, which are as follows:

On August 14, 1907, a contract was duly entered into between the relator and Ramsey county for the macadamizing of Rice street, a county road, by the relator, for the sum of $7,432, to be paid on estimates to be approved by the county board and surveyor. The contract provided that fifteen per cent. of the contract price was to be withheld until the work was fully completed and accepted by the surveyor and board. The work was completed, as the relator claimed, and the contract price paid on estimates, except the fifteen per cent. reserved until the work was finally completed and accepted by the surveyor and board. On May 4, 1908, the relator, asserting that he had fully completed his contract, made and presented his verified claim for the unpaid fifteen per cent. of the contract price, $1,114.80, to the county board. The county surveyor duly approved the claim, and the board on that day duly audited, approved, and allowed the claim, and ordered the payment thereof; the same being the balance due upon the contract price of the work. No appeal was ever taken from the order allowing the claim. The relator duly demanded of the appellants herein the warrant for the payment of the claim so allowed, which was refused. On May 18, 1908, the county board, without any notice to the relator, passed a motion reconsidering their action allowing the claim and nothing since has been done in reference to allowing or disallowing the same. The board did, however, on June 29, 1908, pass a motion ordering the relator to perform certain work on the road, which it was claimed was necessary to the completion of the contract. The relator did not comply with the order.

The question for our decision is: Do the facts stated justify the order and judgment of the trial court directing the appellants to issue and deliver to the relator a warrant in payment of his claim? The board, in auditing and allowing the claim of the relator for the fifteen per cent. of the contract price, which was not payable until the work was finally and fully completed, and accepted and approved as provided by the contract, necessarily found that the contract had been completely performed. There is nothing in the record which would justify any inference that the action of the board in allowing the claim was the result of either fraud or mistake. Whether the board, if the allowance of the claim was the result of fraud or mistake, might have reconsidered its action, after notice to the relator and a hearing, is not a question involved in this appeal; for the sole question is whether the board had the right to reconsider its action under the precise facts of this case. The statutory provisions relevant to the question are the sections of R. L. 1905, following:

Section 434, subd. 1: The county board shall have power: "to examine and settle all accounts of the receipts and expenses of the county, and to examine, settle, and allow all accounts, demands, and causes of action against the same, and, when so settled, to issue county orders therefor, as provided by law."

Section 440: "Whenever any account, claim, or demand against any municipality shall have been verified in the manner prescribed in this subdivision, the board or officer to whom it shall be presented may receive and consider it, and allow or disallow the same, in whole or in part, as shall appear just or lawful; saving to the claimant the right of appeal."

Section 415: "When any claim against a county is disallowed by the board in whole or in part, a claimant may appeal from its decision to the district court by causing a written notice of such appeal to be filed in the office of the auditor within fifteen days after the decision appealed from was made, and giving security for costs, to be approved by the auditor, who shall forthwith notify the county attorney thereof. When any claim against a county shall be allowed in whole or in part by such board, no order shall be issued in payment of the same or any part thereof until after fifteen days from the date of the decision; and

the county attorney may in any case, and if the amount allowed exceeds twenty-five dollars, upon request of seven taxpayers of the county, he shall, on behalf and in the name of such county, appeal from such decision to the district court, by causing a written notice of such appeal to be filed in the office of the auditor within fifteen days after the date of the decision appealed from."

Section 620: "No action shall be maintained against a county upon any claim except county orders, when the only relief demanded is a judgment for money, until such claim shall have been duly presented to the board, and it shall have failed to act upon the same within the time fixed by law, or unless such board shall consent to the institution of such action."

This last provision was added to our statutes by the Revision of 1905. Before its enactment this court had held that the remedy by appeal from the disallowance of a claim by the county board was not exclusive, and that, notwithstanding the disallowance of the claim by it, an original action could be maintained for its enforcement. Murphy v. County Commrs. of Steele Co., 14 Minn. 51 (67); Gutches v. County of Todd, 44 Minn. 383, 46 N. W. 678. This change in the law is significant, as it makes the affirmative action of the board upon a claim against the county final, unless an appeal is taken from its decision within the time allowed by law, and, in connection with the other provisions referred to, gives to the board quasi judicial capacity to decide the merits of claims against the county, subject to the right of either party to appeal from its decisions. Our present statutes make it clear that the board of county commissioners, in passing upon claims against the county and allowing or disallowing them, acts quasi judicially, and that when it has once finally acted, without fraud or mistake in the premises, upon a claim its action is final and binds the parties, unless there be an appeal, and, further, that its power to deal with the claim is exhausted. Ryan v. County of Dakota, 32 Minn. 138, 19 N. W. 653; State v. District Court of St. Louis County, 90 Minn. 457, 97 N. W. 132.

We therefore hold that when a board of county commissioners has once deliberately acted upon a claim against a county, and definitely allowed or disallowed it, so that the time for appeal therefrom has be-

gun to run, it cannot, at least in the absence of fraud or mistake and notice of hearing, set aside its decision and take some other action thereon.

Judgment affirmed.

JAGGARD, J. (dissenting).

I respectfully dissent. The act of the county board was not judicial in the sense that the actions of a court are judicial, but only in the sense that the action of a private individual or any private corporation, passing upon a controverted liability, is judicial or quasi judicial. The fact that a board of officers "has, in the performance of their duties, to ascertain facts, and, in doing so, to determine what the law is, does not of itself render the acts judicial. That has to be done every day by public bodies and officers, in the discharge of purely legislative or executive acts." State v. Clough, 64 Minn. 378, 67 N. W. 202. And see State v. Village of McIntosh, 95 Minn. 243, 245, 103 N. W. 1017.

The county board bears no resemblance to a court. The commissioners were not judges. They were not impartial, disinterested third persons, charged with the determination of other people's controversies. The board was one of two parties to a contract. It was engaged in determining whether that contract had been performed. There was no trial. The contractor was given a hearing, just as he might be before a board of directors in a private corporation. The resolution was not a judgment, in form or in substance. The board is a public body, which may act in its business or in its public capacity. Here it was acting solely in its business capacity. It was a board of directors of a municipal corporation, who had let a contract, and who afterwards passed upon a dispute as to the performance of that contract. It was not bound by its initial conclusion. It had the same right to change its mind that the board of directors of a private corporation has. Its action may have been an admission against interest, in case a lawsuit resulted; but it would not conclude the board. There is no reason for putting it in a less favorable position in the correction of mere commercial, not legal, mistakes than the board of directors of a private corporation with respect to purely business affairs. That the statute prescribed an orderly method for the transaction of business and time of an appeal has no bearing on the controversy.